INMAN v. NEW YORK INTERURBAN WATER CO. et al.

(Circuit Court, S. D. New York.   July 22, 1904.)

1. EQUITY—MULTIFARIOUSNESS OF BILL.
    To settle the right of ownership of stock of a corporation and to ask relief which depends on such ownership are two independent and disconnected matters, and a bill which attempts to join them in one suit is multifarious.

2. SAME.
    A bill examined, and held not only multifarious, but without equity.

In Equity. On demurrers to bill.

Roger M. Sherman, for complainant.

Keatinge & Walradt, for defendant New York Interurban Water Co.

Horace B. Hord, for defendants New York Suburban Water Co. and New York City Suburban Water Co.

Ward, Hayden & Satterlee, for defendant Atlantic Trust Co.

PLATT, District Judge. In order that we may appreciate the scope of this bill in equity, it is necessary to make a brief statement of the material facts alleged and of the relief demanded. Complainant is the owner of stock in the New York & Mt. Vernon Water Company, which, by consolidation, in 1892, was merged in the defendant New York City Suburban Water Company. Said New York City Suburban Water Company mortgaged all its property to the defendant Atlantic Trust Company. Said Atlantic Trust Company brought an action of foreclosure in the Supreme Court of the state of New York against the New York City Suburban Water Company, and in the year 1895 a judgment of foreclosure and sale was rendered in the said action. Complainant thereafter applied to said Supreme Court to be admitted to intervene and defend said action, and said application, which was based upon all the facts herein, was denied by said Supreme Court. Said property was sold in conformity with said judgment of foreclosure and sale, and subsequent to said sale said property came into possession of the defendant New York Interurban Water Company, which said company has mortgaged the same to the defendant West End Trust & Safe Deposit Company of Philadelphia; and the stock of which complainant claims to be owner in said New York & Mt. Vernon Water Company is now partly in the possession of said New York Suburban Water Company and partly in the possession of defendant John Doe, having been wrongfully delivered to them by complainant's agent without his authority or consent. The bill prays for the following relief against defendant the New York Interurban Water Company: (1) That complainant be declared owner of the value of such part of the property originally belonging to the New York & Mt. Vernon Water Company, and ultimately coming into the hands of said defendant company, in the manner above alleged, as is represented by and equivalent to the stock alleged to be owned by complainant. (2) That said foreclosure judgment be declared null and void as to complainant. (3) For discovery as to John Doe. (4) That defendant be enjoined from mortgaging said property. (5) For a receiver. The bill is attacked by demurrers filed by divers defendants. At the hearing counsel were heard and briefs filed in respect of the New York Interurban Water Company and the Atlantic Trust Company. The former says that the bill is altogether multifarious, and without equity. The latter emphasizes those points, and also says that it does not follow the twentieth equity rule, and that this court is without jurisdiction.

I have given the matter that careful examination which such an important subject demands, and a number of substantial reasons

occur to me which imperatively suggest that the bill ought to be dismissed. If my conclusions are sound, it is better for all parties that the controversy should end as soon as possible. On the whole case, this appears to be an accentuated example of fleeing hither "from the justice of the state courts." Let me outline, very briefly, some of my reasons for dismissing the bill:

The foundation of the complainant's right to the relief demanded is that he owned 100 shares of the original company, which by consolidation, in 1892, was merged in defendant New York City Suburban Water Company. There were two certificates, each for 50 shares, which it is claimed were wrongfully disposed of in 1887. One certificate is claimed to have been purchased by said defendant, and the other is in the hands of a mythical John Doe, another defendant. As against both defendants memtioned complainant wishes a decree that he is the lawful owner of the stock represented by both certificates held by them respectively. Passing over the obvious suggestions that if John Doe is a mythical personage—in other words, if the name used represents some one unknown—it must be impossible to allege with any show of reason that he or she is an inhabitant of New York, and that an allegation of inhabitancy is not the same thing as an allegation of citizenship, we reach this serious trouble: It is settled law that when the right of a party to specific relief is so incumbered that he cannot assert that right against another until he has removed the incumbrance, he cannot include an attempt to get rid of the incumbrance in a suit for specific relief, which he might be entitled to have, if the incumbrance were out of the way. 1 Daniell's Chancery Pleading & Practice (6th Am. Ed.) 339. Here he wishes to have the stock first called his own, and then have such action taken as might perhaps be demanded if the stock were his own without question at the time of bringing suit. The position is untenable. Furthermore, the bill recognizes that John Doe may have an equity in the stock, and prays that such equity may be determined. These certificates of stock go to the root of the whole matter, and complainant's clear right to them must be settled absolutely before he can be permitted to assert such right. To settle such right and to ask relief which depends upon the right are two independent, disconnected, and unrelated questions, and the bill which attempts to join them in one suit is multifarious. Shields v. Thomas, 18 How. 253, 259, 15 L. Ed. 368; Walker v. Powers, 104 U. S. 245, 26 L. Ed. 729. Again, the litigation of complainant in settling his rights as to John Doe's stock, and taking care of John Doe's equities, if any shall be found to exist, are matters of no moment to the principal defendant, since, after all has been done, complainant simply steps into John Doe's shoes, and begins his main line of attack. There is no joint interest in opposing the relief unless it be claimed that John Doe's actions have been controlled by main defendant. I find no such assertion. Again, the very case now brought forward has been thoroughly and exhaustively discussed by the courts of the state of New York. The principle involved has been settled adversely to complainant. The refusal to permit him to intervene in the foreclosure suit of the

Atlantic Trust Company may have been discretionary, but it was that kind of judicial discretion which could have been taken to the highest state court, and then reviewed by the Supreme Court of the United States, if it involved a final disposal of the questions which the complainant insists that it settled. Again, whether the case is or is not res adjudicata, I am convinced, after studying the action of the New York courts, that, if the action of the trial court had been sustained on appeal, a very serious injustice would have been worked upon a great many innocent investors. The Cameron Case, 133 N. Y. 336, 31 N. E. 104, followed by the Drake Case, 26 App. Div. 499, 50 N. Y. Supp. 826, and the Drake Case again, 36 App. Div. 275, 55 N. Y. Supp. 225, and finally the petition of the present plaintiff to intervene, which was denied, 75 App. Div. 354, 78 N. Y. Supp. 120, all taken together, furnish, to my mind, a clear and satisfactory solution of the problem.

Let the bill be dismissed, with costs.